

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-4900
Re: Amount appropriated to the use
of Comptroller in administration
of Store Tax Law (Art. 1111d,
Vernon's Penal Code) by Senate
Bill 423, 47th Legislature, 1941

Your letter of October 2, 1942, requests the opinion of
this department as to the effect of that portion of Senate Bill
No. 423, 47th Legislature, 1941, which reads as follows:

"Store application fees provided by law together
with balances on hand at August 31, 1941, and August
31, 1942, are hereby appropriated to the Comptroller
from which the items listed above shall be paid, and
for the administration and enforcement of the store
tax law."

The "items listed above" amount to a total of $40,550.00
for each of the years 1942 and 1943, for salaries, postage, tele-
phone, telegraph, freight, express, stationery, printing, binding,
equipment, rents, repairs, bond premiums, contingent expenses and
travel expense.

Section 2 of the Chain Store Tax Law (Article 1111d, V.
P. C.) provides, in part, that:

"Each application shall be accompanied by a filing
fee of fifty (50) cents for each store or mercantile
establishment, operated or to be operated for the pur-
pose of defraying the cost of administration of the
Act."

Honorable George H. Sheppard, Page 2

Section 4 requires filing fees for renewal applications. Section 9 provides that the expenses of the Comptroller in the administration of the Act shall not exceed the amount received by him as application fees as herein provided, and further provides that: "All monies collected by the Comptroller of Public Accounts under the provisions of this Act shall be paid by him into the State Treasury daily as received; one fourth of same shall be credited to the account of the Available School Fund and the remainder shall be credited to the account of the General Fund."

The Chain Store Tax Law became effective January 13, 1936. From that date to the present you state that the total filing fees received amounts to $302,221.92, and that the total amount expended in the enforcement of the Act is $131,714.49, so that there is, at this time, a balance of unexpended filing fees in the amount of $180,507.43.

On January 13, 1938, you received an opinion from this department holding that the filing fees provided for in Section 2 of the Act are not subject to allocation under the provisions of Section 9. We are advised that you have consistently followed such holding, and have deposited such filing fees in the General Fund.

As we understand your request, you wish our advice as to whether the filing fees received under the provisions of the Chain Store Tax Law should be allocated between the Available School Fund and the General Revenue Fund or whether all of such fees should be deposited to the credit of the General Fund, and as to the meaning to be given to the phrase: "together with balances on hand," as used in the paragraph of Senate Bill No. 423, Acts 1941, 47th Legislature, above quoted.

In the case of Hurt vs. Cooper, 110 S. W. (2d) 896, the court discusses the two different levies made by the Chain Store Tax Law in this language:

"It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure. The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising

of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes. (Citing authorities)

"Applying this principle to the act in question, we experience no difficulty in reaching the conclusion that the so-called license fees levied thereby are primarily occupation taxes. The act makes two separate levies. One is a levy of a filing fee of 50 cents for each store, and as to this levy it is provided that its purpose is to defray the cost of the administration of the act, and that the expenses incurred in its adminis- tration shall not exceed the amount derived therefrom. The other is a levy of a license fee for each store from which much revenue will be realized. The act ap- portions the revenue between the available school fund and the general fund, and the only fact stated for the existence of an emergency is that the state is badly in need of additional revenue." (Emphasis ours)

It is a cardinal rule of statutory construction that all parts of a statute must be given effect, if possible. Section 2 of the Chain Store Tax Law declares the purpose of the filing fee to be "to defray the cost" of administering the Act. Such fees were not regarded by the Legislature as "revenue" to be produced by the Act. Section 9, however, provides that "all monies" col- lected by the Comptroller under the provisions of the Act shall be apportioned between the Available School Fund and the General Reve- nue Fund. The Commission of Appeals, however, in the case of Hurt vs. Cooper, supra, in an opinion adopted by the Supreme Court, by inference, construed the phrase "all moneys" to mean all the li- cense fees collected under the provisions of the Act. This depart- ment, in an opinion by Honorable James K. Neff, dated January 13, 1938, and addressed to you, placed a similar construction on Sec- tion 9. We think that such a construction is correct. To hold otherwise and say that such filing fees are to be allocated to the Available School Fund and the General Revenue Fund, as provided for the other collections in Section 9, would render Section 2 of the Act meaningless. The provision that the expenses of adminis- tration of the Act shall not exceed the amount of filing fees

Honorable George H. Shepard, Page 4

collected simply provides a limitation or maximum amount, beyond which the Comptroller may not go in the enforcement of the Act. Consequently, we hold that the filing fees collected under Sections 2 and 4 of the Chain Store Tax Law are not subject to allocation under the provisions of Section 9.

Article 8, Section 6, of our Constitution provides, in part, that:

"No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer period than two years. * * * "

In view of this Constitutional provision, there could be no "balances on hand" in the ordinary sense of the words. We are convinced that the "balances on hand," referred to in Senate Bill No. 423, Acts 1941, 47th Legislature, mean the difference between the total amounts of filing fees collected by the Comptroller, and paid into the General Fund, and the total amounts expended by the Comptroller in the enforcement of the Act at August 31, 1941, and August 31, 1942, respectively, and that the difference between the total amount of filing fees so collected and the total amount so expended, as of August 31, 1941, was appropriated for use in the enforcement of the Act for the year 1942, and that the difference between the total respective amounts collected and expended as of August 31, 1942, was appropriated for use in the administration of the Act during the fiscal year 1943.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Fowler Roberts

Fowler Roberts
Assistant

FR:ej

APPROVED OCT 31, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN

